UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DAN P. MILLS,                              )
                                           )
         Plaintiff,                        )
                                           )
                                           )
v.                                         )
                                           )   Civ. No. 3:08-CV-55
                                           )   (Phillips / Shirley)
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
         Defendant.                        )

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support, [Docs. 11 and 12], and Defendant's Motion for Summary Judgment and Memorandum in Support. [Docs. 13 and 14]. Plaintiff Dan P. Mills seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 20, 2004, the Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, claiming disability as of June 27, 2003. [Tr. 13]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On May 11, 2006, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 13]. On September 20, 2006, the ALJ found that Plaintiff

was not disabled. The Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirement of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since June 27, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: residuals of remote back and leg injury (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 4041.520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, but only 30-45 minutes continuously; and can sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, but no more than 30-45 minutes continuously. He can push/pull at a level consistent with his ability to lift/carry. He is precluded from work around concentrated exposure to loud noise. He is precluded from more than occasional stooping, bending, kneeling, and squatting. These exertional and non-exertional limitations are commensurate with a residual functional capacity for a significant range of light work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 7, 1954 and was 48 years old on the alleged disability onset date, which is defined as a younger

individual. The claimant is currently 51 years of age, which is defined as an individual closely approaching advanced age (30 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferrable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from June 27, 2003, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 13-19].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

3

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial

evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec. of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. ANALYSIS**

On appeal, Plaintiff argues that (A) the ALJ erred by failing to give controlling weight to the opinions of Plaintiff's treating physicians, and (B) the Appeals Council erred by failing to consider additional evidence relating to the period on or before the date of the ALJ's decision. [Doc. 12]. The Commissioner, in response, contends that Plaintiff's treating sources were not due controlling weight and that substantial evidence supports the ALJ's disability determination. [Doc. 14]. The Commissioner also contends and that the Appeals Council did not err in declining to consider additional evidence because Plaintiff's additional evidence is immaterial to the ALJ's decision and Plaintiff has not shown good cause for failing to acquire that evidence in time to present it to the ALJ. [Doc. 14 ].

5

*A.    The Weight Accorded to the Opinions of Rodney McMillin, M.D., and Patrick Matthiessen, M.D.*

Plaintiff alleges that the ALJ did not give appropriate weight to the opinions of Rodney McMillin, M.D., ("Dr. McMillin") and Patrick Matthiessen, M.D., ("Dr. Matthiessen"), and did not adequately explain why he discounted their opinions. [Doc. 12]. Plaintiff further claims that if the ALJ had given the proper level of deference to these opinions that the ALJ would have found the Plaintiff "disabled as a matter of law under Medical-Vocational Rule 201.14 upon attaining age 50." [Doc. 12 (citing 20 C.F.R., Part 404, Subpt. P, App. 2, Table 1, Rule 201.14)].

The Commissioner responds that the ALJ properly weighed the medical source opinions of record in determining Plaintiff's residual functional capacity. [Doc. 14]. Relying on 20 C.F.R. § 404.1527(d)(2), the Commissioner argues that a "treating physicians opinions are only given [controlling weight] when they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence." [Doc. 14]. Because, according to the Commissioner, the opinions offered by Dr. McMillin and Dr. Matthiessen are inconsistent with the record, the ALJ properly declined to accord them controlling weight. [Doc. 14].

Generally, the "medical opinion of the treating physician is to be given substantial deference, and if that opinion is not contradicted, complete deference must be given." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992). This rule reflects that treating physicians have a greater opportunity than others to examine and observe the patient. Id. Furthermore, as a result of the treating physician's duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. Id. (citing Schisler

v. Heckler, 787 F.2d 76, 85 (2d Cir. 1986)). However, the ultimate decision regarding disability rests with the ALJ, id. (Citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984)), and accordingly, the ALJ is not bound by the opinions of the treating physician as long as the ALJ sets forth a basis for rejecting them. See Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (citing Fife v. Heckler, 767 F.2d 1427, 1437 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")).

1. *Dr. McMillin's Assessment of Plaintiff's Physical Impairments*

The ALJ assessed Dr. McMillin's expert opinion as reflected on the record through two documents. [Tr. 16-17]. In his Medical Source Statement of December 14, 2004, Dr. McMillin described Plaintiff as extremely limited in terms of his residual functional capacity for exertion and ability to engage in postural activities. [Tr. 16-17, 268-69]. As noted by the ALJ, Dr. McMillin's Medical Source Statement likewise advised that Plaintiff can only occasionally feel in his left hand, and must avoid hazards including machinery and heights. [Tr. 17, 271]. In a letter dated July 18, 2005, Dr. McMillin further reported, without elaboration, that Plaintiff suffers from persistent low back pain and is therefore totally unable to have any gainful employment. [Tr. 279]. Both of Dr. McMillin's assessments contradict the ALJ's determination that Plaintiff could engage in light work, which "requires a good deal of walking or standing," or sitting with "some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

The ALJ dismissed the opinion expressed by Dr. McMillin in his July 18, 2005 letter on the basis that "while Dr McMillin is a treating source, his opinion cannot be given great weight as it is not supported by his treatment records or any other objective evidence of record." [Tr. 16]. The

7

ALJ likewise dismissed the opinions expressed in Dr. McMillin's Medical Source Statement of December 14, 2004, on the basis that it is "a very restrictive Medical Source Statement and these limitations are not supported by any objective evidence of the record." [Tr. 17].

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in their decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927. Those "good reasons" must moreover be "supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating sources medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

In this case, the ALJ considered the consistency of Dr. McMillin's opinion in light of Dr. McMillin's own records, the frequency with which Dr. McMillin actually treated Plaintiff, and the nature of the care Plaintiff called upon Dr. McMillin to provide. [Tr. 16]. With regard to consistency, the ALJ notes that on July 23, 2003, just four days prior to Plaintiff's supposed onset date, Dr. McMillin examined Plaintiff and recommended that he return to work. [Tr. 16]. Although Plaintiff claims that his disability arose almost immediately after Dr. McMillin made that recommendation, the ALJ notes that Plaintiff did not follow up with Dr. McMillin for more than a year after that. [Tr. 16]. When Plaintiff did return to Dr. McMillin in 2004, the reason for that visit was not Plaintiff's allegedly crippling polyneuropathy, but rather concern over a mass on his neck possibly related to an earlier thyroidectomy. [Tr. 16].

Based on the foregoing, the Court finds that the ALJ did not err in accepting the evidence in the record as adequate to support his conclusion that Dr. McMillin's opinion should be discounted. The ultimate decision of disability rests with the ALJ, Walker, 980 F.2d at 1070 (citing King, 742 F.2d at 973), and the ALJ need only offer a sound explanation for rejecting the opinion

8

of a treating physician. See Shelman, 821 F.2d at 321. Because the ALJ explained the basis on which he rejected Dr. McMillin's conclusory opinions as to Plaintiff's disability, and that explanation is supported by substantial evidence, the Court finds that there was no error on this point.

2. *Dr. Matthiessen's Assessment of Plaintiff's Physical Impairments*

As the ALJ recited in his opinion, Dr. Mattheissen's December 2, 2005 examination of Plaintiff revealed that:

> In the lower extremities, there was a mild weakness of dorsiflexion on the left. [Plaintiff] had a mild weakness of hip flexion on the left. Bulk was reasonable. Sensory examination revealed a significant decrease in light touch, temperature, and vibration sensation over the central portion of the left foot extending into toes two, three, and possibly four. In addition, he appeared to have superimposed mild sensory loss in the stocking/glove pattern to all modalities to just above mid-calf bilaterally. . . . . The claimant had a straight leg sign on the left [and an] MRI scan of the lumbosacral spine revealed the presence of a protruding L5/S1 disk, as well as a mild disk bulge at L2/L3.

[Tr. 17]. On the basis of this evidence, Dr. Matthiessen concluded that Plaintiff exhibited the symptoms of a sensorimotor peripheral polyneuropathy, as well as evidence of an L5 root irritation and possible radiculopathy on the left. [Tr. 283]. In his Medical Source Statement, Dr. Matthiessen opined that Plaintiff can neither frequently nor occasionally lift or carry as much as 10 pounds, is limited in his ability to push and pull with both his upper and lower extremities, cannot stand or walk for more than two hours of any eight hour workday, and cannot sit for as long as six hours out of an eight-hour workday. [Tr. 302-03]. Dr. Matthiessen cited plaintiff's peripheral polyneuropathy as a cause of every one of Plaintiff's limitations, and reported that radiculopathy is an additional cause of Plaintiff's exertional and postural limitations. [Tr. 303-05].

Dr. Matthiesen's diagnosis of peripheral polyneuropathy accorded with an earlier EMG/NCS conducted by Dr. Kendrick K. Henderson ("Dr. Henderson") that indicated peripheral

9

polyneuropathy. [Tr. 299]. However, Dr. Henderson reported that the EMG/NCS revealed no evidence of a radiculopathy. [Tr. 299]. The ALJ found it "very troubling that Dr. Mattheissen attributes limitations because of claimant's radiculopathy when the EMG studies did not substantiate this conclusion . . . ." [Tr. 17]. Although Dr. Matthiessen attributes every limitation disclosed in his Medical Source Statement to peripheral polyneuropathy, and cites radiculopathy only as an additional cause, [Tr. 303-05], the ALJ was entitled to consider any inconsistency between Dr. Matthiessen's Medical Source Statement and the results of other clinical testing of Plaintiff in determining what weight to accord Dr. Matthiessen's opinion. 20 C.F.R. § 404.1527(d)(4).

Furthermore, Plaintiff's own testimony supplies substantial evidence of inconsistency between the extent of his injury and Dr. Matthiessen's opinion. At his hearing Plaintiff testified that he has worked on his wife's car, and gone fishing since the alleged onset of his disability. [Tr. 17, 429]. Likewise Plaintiff testified that he washes dishes, does laundry, and can lift 10 pounds from the ground up. [Tr. 17, 429, 433]. Plaintiff's own testimony regarding his exertional limitations therefore contradicts Dr. Matthiessen's opinion that Plaintiff simply cannot lift anything. [Tr. 302]. Again, the ultimate decision of disability rests with the ALJ. Walker, 980 F.2d at 1070 (citing King, 742 F.2d at 973). Because the ALJ explained the basis for rejecting Dr. Matthiessen's opinion, citing substantial contrary evidence in support, the Court finds that there was no error on this point.

10

Case 3:08-cv-00055-TWP-CCS   Document 15   Filed 04/28/09   Page 10 of 15   PageID #: 69

*B. The Appeals Council's Refusal to Reconsider Plaintiff's Claim In Light of Plaintiff's Additional Evidence.*

Plaintiff further alleges that the Appeals Council erred in refusing to reconsider Plaintiff's claim in light of additional evidence, relating to the period prior to and including the date of ALJ's decision, that was not available to the ALJ as of the date of Plaintiff's hearing. [Doc. 12]. Plaintiff points specifically to diagnostic documentation of an EMG/NCS performed by Dr. Matthiessen on February 1, 2007, and the report of Edward Johnson, M.D. ("Dr. Johnson") generated following his March, 2007, neurological evaluation of Plaintiff. [Doc. 12]. The Commissioner responds that Plaintiff has neither clearly requested remand to the Appeals Council, nor established that remand to the Appeals Council is appropriate in this case. [Doc. 14].

"[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). However, sentence six of 42 U.S.C. § 405(g) provides that a court "may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." A sentence six remand is comparable to a Fed. R. Civ. P. 60(b) motion for a new trial based on newly discovered evidence. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 243 (6th Cir. 2002). In this case, Plaintiff has both requested remand, [Doc. 11], and pointed to certain additional evidence not before the ALJ at the time of Plaintiff's hearing as one possible basis for that remand. [Doc. 12]. Remand would therefore be appropriate under sentence six of 42 U.S.C. § 405(g) provided that Plaintiff's evidence is new, material, and omitted from the record before the ALJ only for good cause.

The Commissioner concedes that Plaintiff's additional materials are in fact "new." [Doc. 14]. Evidence is new if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990). In this case, those additional materials relied upon by Plaintiff in his motion came into existence in early 2007, nearly a year after Plaintiff's May 2006 hearing before the ALJ, and months after the date of the ALJ's decision in September 2006.

However, Plaintiff's new evidence is not "material." New evidence is considered "material" if the claimant can "demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988). In this case, the ALJ rejected Dr. Matthiessen's opinion as to the degree of Plaintiff's limitations in light of the October 11, 2005, EMG/NCS performed by Dr. Henderson. [Tr. 17]. Dr. Henderson reported that Plaintiff's results indicated a peripheral neuropathy with "moderate asymmetric sensory and mild asymmetric motor involvement." [Tr. 298-99]. Dr. Matthiessen's February 1, 2007, EMG/NCS likewise revealed an "abnormal nerve conduction in three limbs because of the presence of a sensorimotor peripheral polyneuropathy." [Doc 12, Tr. 321]. Dr. Matthiessen's February 1, 2007 EMG/NCS therefore adds very little to Dr. Henderson's October 11, 2005 EMG/NCS. Because the ALJ relied substantially on Dr. Henderson's 2005 report in rejecting Dr. Matthiessen's opinion, [Tr. 17], the ALJ would almost certainly not reach a different conclusion regarding Dr. Matthiessen's opinion upon reviewing Dr. Matthiessen's own remarkably similar report.

Dr. Johnson's observations of March 14, 2007, are likewise unexceptional in light of the record before the ALJ. Dr. Johnson's examination of Plaintiff revealed decreased sensation to light

touch in Plaintiff's left leg and loss of sensation in Plaintiff's left foot. [Tr. 373]. Dr. Johnson also found that there was some slight loss of sensation and strength in Plaintiff's right leg and both arms. [Tr. 373]. Dr. Johnson's observations therefore largely accord with those reported by Dr. Matthiessen in his report of December 2, 2005, [Tr. 281-83], which the ALJ considered in reaching his initial determination as to Plaintiff's claimed disability. [Tr. 17]. Furthermore, Dr. Johnson's opinion that Plaintiff could not carry any load and "could not perform any activity involving heights, climbing, balancing, or operating foot pedals with the left leg[,]" [Tr. 377], is consistent with Dr. Matthiessen's opinion as expressed in his Medical Source Statement [Tr. 302, 305], which the ALJ discounted. [Tr. 17]. Moreover, Dr. Johnson opines that Plaintiff could lift 10 to 15 pounds, sit for 4 to 6 hours in an 8 hour workday, and stand or walk for 2 to 3 hours each workday with the assistance of a cane. [Tr. 377]. Those limitations are substantially less restrictive than the limitations reported by Dr. Matthiessen in his Medical Source Statement. [Tr. 302]. Because Dr. Johnson's opinion as to Plaintiff's limitations is either consistent with Dr. Matthiessen's opinion or, in several respects, less restrictive than Dr. Matthiessen's opinion as expressed in the Medical Source Statement discounted by the ALJ, the ALJ would almost certainly not reach a different conclusion as to Plaintiff's disability upon reviewing Dr. Johnson's materials. For all these reasons the Court finds that Plaintiff's additional evidence is not material within the meaning of sentence six of 42 U.S.C. § 405(g).

Finally, Plaintiff has not established any "good cause" for not putting this additional evidence before the ALJ prior to the date of his decision. "Good cause for the failure to present medical evidence at an earlier hearing requires the claimant to 'give a valid reason for failing to obtain relevant examinations prior to the hearing.'" Johnson v. Astrue, No. 3:07-CV-96, 2008 WL

13

746686 at *3 (E.D. Tenn. March 18, 2008) (quoting Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993)). Good cause may exist, for example, where ALJ decides a claim prior to the onset of a disabling condition. Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir.1984) (discussing Dorsey v. Heckler, 702 F.2d 597 (5th Cir. 1983)). In this case, Plaintiff offers no explanation for why he did not obtain the additional evidence prior to the ALJ's decision, [Doc. 12], and none is otherwise discernible.

Dr. Matthiessen had already examined Plaintiff, and generated evidence considered by the ALJ. [Tr. 17]. Moreover, Dr. Matthiessen first examined Plaintiff after Dr. Henderson had conducted his EMG/NCS, [compare Tr. 281 with Tr. 298]. Plaintiff has not offered any explanation why Dr. Matthiessen could not have conducted another EMG/NCS in time for the ALJ to consider the results. Likewise, Dr. Johnson's report indicates that he is concerned with that same condition evaluated earlier by Dr. Matthiessen, but Dr. Johnson does not note any drastic developments with regard to that condition. [Tr. 376-77]. There was simply no reason why Plaintiff could not have obtained this additional evidence prior to the date of the ALJ's decision. The Court therefore finds that Plaintiff was without good cause in failing to submit his additional evidence prior to the date of the ALJ's decision.

## V.  CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing light work. Substantial evidence supports the ALJ's findings and conclusions. Moreover, Plaintiff has not shown "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in

14

a prior proceeding" justifying remand under sentence six of 42 U.S.C. § 405(g). Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment [Doc. 11] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 13] be **GRANTED**.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).